# Staunton.

MILLER v. MILLER.

SEPTEMBER 12, 1901.

1. WILLS—*Case in Judgment—Member of "My Family."*—A testator, whose family consisted of himself, his wife, a brother, and Lottie Bowen, by his will, directs his executor "to take proper care of Lottie Bowen, supplying her with comfortable wearing apparel, food, etc., as long as she remains a member of my family, or until she becomes twenty-one years of age." After the death of the testator, his wife died, surviving the brother, who was residuary legatee and devisee under the will, and Lottie Bowen. The latter never abandoned or renounced the provision made for her by the will, but the brother refused to permit her to remain with him as a member of the family. *Held:* The death of the testator and his wife did not terminate the existence of the "family," as that term is used by the testator, and Lottie Bowen has the right to recover of the brother the monthly commuted value of the provision made for her by the will of the testator until she arrives at the age of twenty-one years, or until the provision for her is otherwise legally terminated. Nor would the death of the brother affect Lottie's right.

Appeal from a decree of the Circuit Court of Augusta county, pronounced December 18, 1899, in three suits in chancery heard together, in one of which the appellee was the complainant, and appellant was the defendant.

*Amended and affirmed.*

The opinion states the case.

*J., J. L., and R. Bumgardner*, for the appellant.

*Curry & Glenn*, for the appellee.

Opinion.

KEITH, P., delivered the opinion of the court.

Noah Miller died in December, 1895, leaving a will, which is as follows:

" I, Noah Miller, being of sound mind and disposing memory, and knowing the uncertainty of human life, do make and declare this my last will and testament, revoking all others, in manner and form as follows, to-wit:

" 1st. I appoint my brother, Joseph Miller, as the executor of this my last will and testament.

"2d. I will and direct that my said executor shall dispose of all the surplus hay and grain, if any on hand, and apply the proceeds thereof to paying my part of just debts as soon after my decease as he can.

" 3d. I direct that my executor shall take proper care of Lottie Bowen, supplying her with comfortable wearing apparel, food, &c., as long as she remains a member of my family, or until she becomes to be twenty-one years of age. I desire to be distinctly understood that her support shall cease as soon as she arrives at the age of twenty-one years.

" 4th. I will and bequeath to my beloved wife, Christiana Miller, my entire interest in my real estate and also in my personal property as long as she remains my unmarried widow, or until her decease, should that occur before she marries; should she marry, then she forfeits her entire interest to the property, and after her death or marriage the entire property, both real and personal, reverts to my brother, Joseph Miller. I desire to be understood that my brother, Joseph Miller, is to manage the business on the farm just as it has been done during my natural life.

" In witness whereof I have hereunto set my hand and seal this the 14th day of December, 1895.

"NOAH MILLER. (Seal.)"

Some time in 1898 his widow, Christiana Miller, died, and Joseph Miller, the testator's brother and executor, became entitled to the whole estate of Noah Miller, real and personal, in accordance with the terms of the will.

A short time before the death of Mrs. Miller, Lottie Bowen, who is named in the will of Noah Miller, by her father, as next friend, filed her bill in chancery to have her rights under the will of Noah Miller ascertained.

The administrator of the widow, Christiana Miller, also brought a chancery suit against Joseph Miller and others, and Lottie Bowen also brought an action of *trover* against Joseph Miller for the recovery of a horse. The last named case seems by consent to have been heard along with the chancery suits. The commissioner in chancery makes one report covering all three cases, and they are all disposed of in the decree appealed from, which decides that Lottie Bowen is not entitled to recover the horse for which she sued at law; and that Christiana Miller's administrator do recover of Joseph Miller, executor, the sum of $144.10, with interest from July 10, 1898.

The controversy as to the ownership of the horse, and the decree in favor of Christiana Miller's administrator are below the jurisdiction of this court. The subjects involved in these suits have no connection with each other, nor with the suit of Lottie Bowen brought to establish her rights under the will of Noah Miller. They were heard together, and disposed of by the same decree from motives of convenience and economy, and with these observations we shall dismiss them from further consideration.

The principal suit presents questions of interest, by no means easy of solution.

Lottie Bowen came when a child of tender years to live in the family of Noah Miller, who seems to have treated her with kindness and affection. In his will he directs his executor to take proper care of her, "supplying her with comfortable wearing

apparel, food, &c., as long as she remains a member of my family, or until she becomes to be twenty-one years of age." About three years after the death of the testator she went upon a visit to her father, in Albemarle county, and upon her return with her father, after an absence of a few weeks, Joseph Miller refused to receive her, stating that her father could take better care of her than he could. During her absence Christiana Miller died, and under the terms of Noah Miller's will, his whole estate, real and personal, had passed to his brother, Joseph. The commissioner, to whom the case was referred, finds that neither Lottie nor her father ever abandoned or renounced the provision made for her in the will, and that Lottie was entitled to recover the sum of ten dollars per month from the death of Mrs. Miller until she becomes twenty-one years of age, and the court decreed accordingly.

We do not think the evidence shows any act upon the part of Lottie Bowen which should defeat or impair her right to recover. It is true that the provision is made for her as long as she remains a "member of my family," and it may be that if she married or refused to remain a member of the family, and her father had failed or declined to exercise his parental authority to induce her to return, or had forbidden her to return, the executor might well have taken the position that he was ready to comply with the will, and to provide for her as a member of the family, but that he was under no obligation to commute her clothing and support into a money equivalent. But no such case is presented. This girl, with the consent of Joseph Miller and Christiana Miller, went upon a visit to her father. After a few weeks she was willing to return, and her father showed his approval of her return by going with her. Joseph Miller, who had become vested with his brother's whole estate, and charged with Lottie's maintenance, refused to receive her. He seeks now to justify his conduct by the interpretation which he asks the court to place upon the will of Noah Miller.

We agree with counsel for appellant that the question to be decided is, "How long is the executor required under the will to continue to provide for Lottie?" that it is only by virtue of the directions given to him by the will that the executor owes any duty to her, and that we must endeavor to ascertain from the will itself the intent of the testator upon this point.

It is clear that the provision is to terminate when the beneficiary attains the age of twenty-one years. It seems that the testator expected that Lottie should continue after his death to remain with, and be provided for as a member of, his family, but it is not reasonable to suppose that he meant that her support should be withdrawn upon her ceasing to be a member of his family, if the cessation of that relation was brought about without fault on her part, but by the arbitrary act of his brother, who thereby relieved himself of a burden upon the estate bequeathed to him. When the will was written, the family of Noah Miller consisted of himself, his wife, his brother, and Lottie Bowen. He, of course, did not intend that the provision for Lottie should end when the family as then constituted ceased to be. It could not come into existence under his will until after his death, and upon his death in literal strictness " his" family passed out of existence. Did it cease upon the death of his widow? We think not. When the testator uses the term "my family" he is speaking of a conception in his own mind, an entity so to speak, different from and independent of the units of which it was composed. He could not have intended doing, on so solemn an occasion, the vain thing of making a provision which should be dependent upon the continuance of his family as it was then composed; and it clearly appears from his will that he contemplated that the support provided might continue for a number of years, and was to be unconditionally determined only when Lottie reached the age of twenty-one years. Within that time he must have known that death would not improbably still further diminish the family circle from which he was

shortly to disappear. Had he foreseen the death of his wife, can we believe that he would have regarded it as the total extinction of his family, and as the event which was to terminate his bounty? His wife might have survived until Lottie became twenty-one years of age, or might have died immediately, and in fact did die within three years after the execution of the will. Why should the bounty to Lottie end with the death of his wife? It was in no degree made dependent upon services rendered, or to be rendered by her to his wife, or to any one else. It was a spontaneous benefaction which he contemplated might continue until she became twenty-one years of age, but was to cease unconditionally at that time. Nor do we think, for like reasons, that the death of Joseph Miller would affect Lottie's right.

We are of opinion that there is no error in the decree of the Circuit Court. It may happen, however, that from some supervenient cause the provision made in the will may be forfeited, and to provide for such a contingency the decree will be amended by reserving leave for any party to apply for any relief to which he or she may be entitled, and, as amended, affirmed.

*Amended and affirmed.*